23-6258 and Ms. Wolfe when you're ready you'll have reserved two minutes for rebuttal. Good morning, your honors. Mr. Johnson's triad. Are you hearing? I am. It's not your head. It's. May I have a moment? Of course. It's funny, the call seems to be coming from 212-857. It's like a horror movie. It's coming from inside the building. I know, exactly. Mr. Johnson's trial occurred in 2022 after the courthouse, district courthouses in this circuit had opened for trials and a number of the precautions, the COVID precautions, such as procedures for entering the courthouse had been relaxed. Just before the trial began, the COVID numbers started to rise. And because of that, and advice from the court's epidemiologist, Judge Deary decided to revert to the practice before the courthouse had opened, the full-blown COVID pandemic practices. And he did this even though he repeated a couple times that he would prefer not to, that he didn't want to. But he did it. And although the jurors were socially distanced, the court reduced the spacing from six feet to three feet apart. There was no discussion of whether any members of the public could fit into that extra 42 or so feet. And don't trust my math here. And it seems from my research, aided by AI, for what that's worth, not dependent on AI, but aided, that most of the COVID trials have worked their way through the system. And so I see this case as somewhat of a postmortem, because this will happen again. I assume there will be more variants. And from the cases about this— So there was no objection by your client's lawyer, right? Correct. And because it's a structural error, it's just automatic reversal, new trial, public trial, depending on what happens with COVID. Your main claim was that the court was too closed and you couldn't hear the people who went in the next door room, couldn't hear, it was static and so on. But you didn't object after that. No, the attorney did not. The attorney did not and should have objected. I can't think of any excuse for not doing so. Well, that's a different question. But the question of whether it is plain error is important, because it's much harder to say that what was going on was plain error, and whether if there was error, it would be substantive. But was it plain error is seemingly before us. Then the question of whether there was adequacy or inadequacy of counsel is a separate issue. So once there's a structural error, there's no showing of prejudice required. There's no— I think we have case law that says—so that's true that there's no harmless error analysis. Correct. But I think there is still plain error analysis for structural— that structural errors satisfy the third prong of plain error, which is the deprivation of substantial rights. So the nature of this fact of it being a structural error moves us beyond plain error and, I submit, it moves us— it doesn't move you beyond whether the error was so clear that the district court should have seen it. You know, the district court would, had you objected, might have seen it and done something differently, and that's as much a part of plain error as anything else. Now, then the question would be, was there adequacy or inadequacy of counsel, and that would be a question of whether it was tactical and so on, but it's a different issue. The fact that you don't need to show prejudice because it's structural doesn't mean that the error was necessarily plain. I think it does mean the error—if it's structural, it is plain. And structural— Can you cite me a case that says whenever an error is structural, plain error is met? Can you cite me a single case that says that, as against speaking as you did, that it is that the prejudice requirement is met? I can cite you a case, and actually a number of cases, which say we're not going to decide this. We assume— But Hunt and Laurent did decide it, right? Hunt, which came out last year, and Laurent, which came out in 2022. I mean, the quote from Laurent, which is our case from 2022, says— Right, right. Whereas here, you know, the right to a public trial is a structural claim. It is not subject to harmless error. However, whereas here, defendant failed to object, we review for plain error. And the Supreme Court has made it very clear to us here in the Second Circuit that there is this fourth prong of plain error. Right. And there are—there is a need to show—it's unfortunate because it means that, as a practical matter, your Strickland standard and your plain error standard are all going to turn on prejudice eventually, no matter how we get at this. Right. You've asked us to look at it directly, and you've also asked us to look at it through the lens of Strickland. But either one of those is going to require a finding that this harmed the defendant in some way, isn't it? Well, Hunt occurred, you know, during the lockdown. Oh, I think Hunt is potentially distinguishable factually. Right. I'm talking about the legal bases on which we're proceeding. Right. And the question we're having for you is you're saying plain error is definitionally satisfied when there's a structural error. Right. That's your position. As I'm making the same argument on Strickland, that it's, you know, a public trial error is unquantifiable. And because of that, and because it's so important, you can't get into this prejudice or substantial rights argument. You can't get over the problem that if you don't object, the court is unable to correct. And so in some ways, there is a tactical game that can be played. I won't object, and then there'll be a mistake, and then I'll come back and say, hey, you made a mistake, and the mistake is big enough so it's structural. And that's a problem, because that gives an incentive. I'm not saying that that's what happened here, but it's an incentive for people to do that, which is one of the fundamental reasons for plain error analysis. With this type of error, with this type of public trial structural error, the judge is responsible for it. Well, it may be that the judge didn't know that there was static, didn't know that you could see witnesses. Those are all things that an objection would have brought out. Well, not being able to see the witnesses and the fact that there was no two-way video, like the way I can see you, Judge Calabresi, and you can see me, and the fact that a member of the public, a friend of the defendant, tried his hardest to rectify the situation, those were things that withdrawn. The judge did not know about the conditions in the viewing room. But in the first instance, I'm arguing that there should not have been a viewing room. There is a public trial. I mean, think about football games, right? Of course it's easier to see them from your couch, but people pay thousands of dollars to be there. If we agreed with you that under the circumstances, because schools were open and things like that, a public viewing room would be a violation, period, then your case is easy. But if instead we think that the right to a public trial would not have been violated if the public viewing room was adequate, if it was as clear as I am with you or you are with me and things of that sort, then the failure to object when it wasn't adequate becomes a very important point. But that's except, I think, the very last day, not even the lawyers knew that. They didn't know what was going on in the public viewing room. And I think there was United States v. Gupta where there was no objection to the family being told to leave the courtroom during jury selection. There wasn't a preservation issue because the lawyer didn't know. So on that aspect of it, the lawyer didn't know. And maybe I can set this out a little more clearly. It's opposition that was structural error. And then you go to the Waller factors to determine a violation of public trial right is structural error. Then you go to the Waller factors to determine whether there has been a violation. And in the brief, I've set out, you know, analyzed each of those factors independently. And since I want to reserve two minutes, I'll yield to my colleague. Thank you, counsel. We'll hear from the government. All right. May it please the Court, my name is Michael Gibaldi. I'm an assistant U.S. attorney in the Eastern District of New York. And along with my colleague, Jonathan Siegel, I represented the United States in the district court as well. I want to start by picking up on some of the questions that were asked concerning the appropriate standard of review here and the nature of plain error review. This Court has held as recently as last year, 2023, in Mendonca, that a claim of a violation of the right to a public trial is subject to plain error review. Well, I never knew until I heard from your adversary that the right to a public trial is equivalent to the right to pay thousands of dollars to see the Giants lose in person. But apparently, that analogy is being made. I don't know that it's a perfect analogy. But it certainly, it's been held to be a structural error in the sense that it's not subject to harmless error review. But as recently as Mendonca, this Court said, and that was a complete closure of the courtroom during jury selection, two days where there was no live audio-video feed, also a trial conducted during the COVID-19 pandemic. This Court said that constituted error. The error was plain. However, because defense counsel did not object, on appeal, this Court declined to reverse based on the fourth factor of plain error review, essentially saying that, and that is a question of whether the error seriously affected the fairness of the proceedings. In Mendonca, this Court held that reversal, quote, serves little purpose where the defendant fails to object to a courtroom closure. And so even if this Court were to find that there were an error in this case, we think that under Mendonca, certainly, reversal would not be appropriate where the defendant did not object. But I do also want to go back to— But that's, you're not, you can't go too far the other way, either, and say that plain error in a public trial question is always a loser, right? That sort of sounds like you're saying Mendonca says, if you're on plain error review for a public trial issue, you can never prevail. That can't be the rule, right? That's a fair question. I'm not saying that, to be clear. I think if you look at what the Court said in Mendonca, where it said, look, the Court made an error, but the record also clearly showed that the Court was trying its best under very difficult circumstances of a global pandemic. And, yes, there was error in that case. And, yes, the error was even determined to be plain error. That because the record showed that the district court was doing its best to accommodate the—was being mindful of the public trial, right? It may have violated it in that case. That there was no sense that the error fundamentally affected the fairness of the trial. And I think you certainly have that here, where Judge Deery certainly was trying his best under difficult circumstances. Just to put the Court back in 2022, I know that defense counsel says, well, it wasn't, you know, at the same time as the Hunt trial occurred. But this was still a time where Judge Deery had observed that COVID cases were rising. He had consulted with the Court's epidemiologist, who recommended to him to go back to this system of having the jury throughout the courtroom and the public watch the trial from another room. But isn't your case stronger? That is, if a court decides that it's going to close the courtroom altogether and do nothing, then an objection that doing nothing doesn't really add to the Court's knowledge. Here, the Court tried to do something that would make the trial almost public. And the argument was that it didn't work, which the Court didn't know, but the lawyers could have objected to. So isn't your case stronger? Yes. I think that's certainly right, that those are the facts of our case, and that had defense counsel made an objection at the time, Judge Deery could have tried to accommodate that objection and made certain changes to address the objection. So that there is here a danger of sandbagging, which isn't in the case that you described before. I think that is certainly true here, and that's certainly a basis for this Court to affirm. And just with respect to the—because I think there are two separate issues, as I hear defense counsel arguing it. One is just per se was the use of the overflow room, a violation of the right to a public trial. And then there's this other claim about, well, in this case— And we're calling it an overflow room, but it's not, right? It's not like some members of the public were allowed in and the rest. It's the three-courtroom system, right, where all members of the public are physically excluded but are watching on a closed-circuit feed. You're totally right, Your Honor, and I apologize for the inaccurate shorthand.  We've all been using it sloppily in this case. Using a different courtroom for the public to view, whether that per se is a violation, which we say is not, should be reviewed for plain error, certainly not plain error in this case, especially given this Court's other decisions. Can I ask you about another element of the four-factor closure test? Yes. And maybe this is because I don't—no, I was going to say I don't know if I ever closed a courtroom as a trial judge, but I did very rarely. But the test, I think, the test requires that the Court make those findings, and I think Presley says this, there are a bunch of Supreme Court cases that say, before closing the courtroom. And there weren't really findings here. The judge says, gosh, I'm struggling with this. The numbers are up again. I don't wish—I wish I didn't have to, but I'm going back to the old system, and then just keeps moving. You know, when the old system, the three-courtroom system, was formally in effect, arguably you have—you could say that the Court's standing order, which all the districts had, right, that the standing order itself made the findings necessary. But here I'm trying to figure out—the judge made great findings after the fact, but what findings there really are before the closure, it's really just a statement rather than a finding, it looks to me. Well, Your Honor, I think the first factor, he did note that the COVID cases were rising and that he had consulted with the Court's epidemiologist. He did also note that the—in his order, which, as Your Honor noted, was after the fact, but he noted that the Court's plan for resumption of jury trials during COVID-19 wasn't a fact at the time he made that decision. Yeah, but— Which is footnote one of his order. The official—my read of the standing orders was at the time the plan for reopening was in effect, but that they were not mandating the three-courtroom system at the time. It was not mandated, but there were still— Right, so there couldn't have been a finding that said the only way to safely have a trial is with a three-courtroom system, because it wasn't mandated. Well, I think that certainly— It was an option that was presented. It was an option that was presented and that Judge Deery decided to employ after determining not just that the COVID cases were rising, but as we point out in the brief, this had affected a trial, and all the parties were on notice of this. We were waiting to start this trial. We were supposed to start immediately after. But the fact that that's an anecdotal, personal experience thing, like, and I know how that works. We all do that. We've just had this bad experience with COVID affecting a trial. But what I'm asking you very specifically is, assuming that I'm right, that you're required under Supreme Court case law, the court is required to make findings adequate to support the closure prior to the closure, that I want us to set aside everything that was said after the fact and look at that one paragraph that I think it is in a pretrial transcript, and I want you to tell me if you believe that's sufficient to meet the Waller standard and Pressley and these other cases, and if so, how? Well, I think it is sufficient in part because, as this court has noted in Hunt, case-specific findings, which is what courts are ordinarily required to do, are not required when the court is making a partial closure or a full closure in response to a generalized threat. And this court held in Hunt that COVID-19 is a generalized threat. So I don't know that actually the same degree of… Is the failure to make specific findings as against the general statement plain error? That is, I assume that the presiding judge is correct and not the findings that the Supreme Court had said should be made. But was that objected to, and is that subject to plain error? It certainly would be subject to plain error review. No part of what the district court decided to do was objected to, whether it be the use of the separate courtroom for the viewing public or the particular facts. Again, my problem is that if it is that, then we have again the sandbagging problem. The judge neglected to be as specific as was required. Counsel says, ah, how nice. I don't need to object. If we win, we win. If not, this is error. And if that's met and plain error doesn't bar it, that's fine. And I think that that's certainly a legitimate concern and something that this court articulated in Mandonca, that if you don't object, you deprive the court of the ability to make perhaps more fulsome findings than that the court would prefer to see. But the failure to object, it doesn't put the court on notice of the issue in a way that it sort of creates this issue where we may not have the same findings that we would like to see, but it all stems from the failure to object. But the findings here, so to be clear, what the findings are is, I'll quote, number one, we have a problem with COVID again. That's a quote. Number two is given what has been reported not only in the popular press, but by the court's own epidemiologist, that is the prudent choice. Those are the two findings. To be clear, I don't know if there's been talk about consulting with the epidemiologist. I don't think it's a secret that during COVID, there was an epidemiologist assisting the court and had conference calls where everyone could listen in, all of us that were sitting could just listen in. So I'm not, the judge doesn't indicate that he sort of affirmatively reached out and said, here's my situation in this place at this time, should we have a trial. So that is the extent of the findings. And the contention is that under Hunt and MnDONCA, given the generalized threat of COVID, we have a problem with it again, and given what's been reported by the popular press and the epidemiologist, those are sufficient findings under the Waller-Forquan standard. Our position is that those are sufficient findings, but even if they weren't sufficient findings, that this court certainly should not reverse, because this proper standard of review is plain error. I do also, I see my time is. And your argument must be that they're close enough to sufficient findings so that the court wouldn't necessarily understand without being warned that they weren't. Because you don't always have to warn the court. If certain findings are absolutely clear, if a court simply doesn't do it, then it's its problem. But here you're saying it's close enough. Maybe they don't quite meet. Is that what you're saying? Yes, certainly close enough. And so if this court were to have an issue with it, I think the court should also determine that the court was trying its best and it is close enough. And so under the plain error standard of review, the court should not reverse. I see that my time is up. I know that there was the other issue raised in this case about Ivan Eli, the government's cooperating witness. I'm happy to answer any questions to the extent the court has them otherwise. But your adversary didn't go into them on her remarks, so I think that can rest on the briefs. Thank you. Thank you. All right, counsel, you have a couple of minutes for rebuttal. Thank you. Judge Calabresi, I understand your concern about sandbagging. It usually doesn't work because when you don't object, if the lawyer doesn't object, it's just out of the box. But we're in the land of structural error, so I submit that it's different. And also, it's easy to avoid. All the judge had to do was ask counsel, who would have to consult with his client, do you object to these procedures? And there would have been, you know, a clear waiver, which may not have mattered under a structural error analysis, but there would have been a clear waiver. And it's sort of – it's always strange to me that in the district court, attorneys spend so much time writing letters about the speedy trial act and putting it on the record and the judge has to make specific findings. And then with the CARES Act, they were so careful to make sure there was a record of why a proceeding could be handled remotely. Yet, here we have a public trial issue. I agree with you. If there are some things which are clearly required, then I wouldn't say plain error isn't met because no one objects to something that is clear. The question is whether in the context of this case were what the judge failed to do in findings and what happened when the other rule was not really working, were that sufficiently clear to meet that level? I think it is sufficiently clear that it was – you just walk through the wall of factors and they were not met here. So there has to be a new trial. I want to just for one second talk about Mendoca and it just came back into my mind. I couldn't find it. But that was a mid-pandemic case and Judge Pollack really grappled with the issue of what to do with the COVID restrictions. And the decision stresses that she solicited the input of the parties. So very different type of waiver context. One more point that in Judge Deery's decision, proclamation about how the trial would go, he didn't make any provision for family members and whether there was room in the court for them. There's an Idaho case. Counsel, I didn't see an argument here that this was focused on family members, right? It was a non-family member who raised the issue? Right. And he – there was no – I know, that's one of the things. There was no discussion in the record about family. The only mention of it was that I think – No, but I mean even after the fact. That hasn't really been a claim that your client has been making, right, that it was the exclusion of his family that was the problem. It is. I understand there's a whole line of cases. I mean, we briefed it. And both as how important it is and also that there was no accommodation made. Idaho case, 2020. The district court judge set up a two-way video system. So the jury could see the public in another room and the public in another room could see them. And it wouldn't be so different to have multiple cameras in a courtroom. So that would have been sufficient here? Hmm? That would have been sufficient here? No. Is that why we're focusing on family members? Yeah, I don't think it would. Well, I'll tell you why I don't think it would. I made a mistake. Well, I don't – we're not there. So I'm just trying to figure out why we're talking about this right now. Because there were things that could be done that weren't. Got it. And it was probably a mistake for me to talk about football when I know nothing about it. But I do know something about – Nobody would pay to see the Giants. We'll tell you that. What? Anyway. I do know Broadway. And it wouldn't exist but for the audience. Otherwise, they would just put a camera there, record everything that the actors do, and put it on the TV set. The actors live for the audience.  And the audience being part of it and there makes a huge difference. I think we have your argument, counsel, unless my colleagues have more questions. All right. Thank you. Thank you all for your arguments. We'll take it under submission.